The second case of the day, Della Cooley v. Nancy Berryhill, number 172239. Mr. Schultz, we'll hear from you when you're ready. May it please the Court, Your Honor, it's Barry Schultz on behalf of the appellant Della Cooley. In the social security disability claim, the main error that plaintiff believes the administrative law judge made was the failure to properly evaluate the symptoms of fatigue and daytime somnolence that Ms. Cooley experienced from her combination of impairments of sleep apnea and chronic fatigue syndrome, fibromyalgia, and possibly side effects from the pain medication that she took from time to time. There is significant evidence in the record supporting a finding that Ms. Cooley's inability to sleep well at night, getting four hours of sleep, she testified at the 2014 hearing, and about five hours of sleep, sometimes six on a continuous basis. She testified at the 2012 hearing. It causes her to feel tired and exhausted during the day, particularly in the 11 to 2 o'clock period, where the fatigue is so overwhelming that she has to rest. If she's standing, she has to sit down. If she's sitting, she's likely to fall asleep, and that she would nod from time to time. The administrative law judge seemed to recognize the fatigue and the daytime somnolence because he limited her from driving for more than 30 minutes at a time or being exposed to open heights, unprotected heights, or hazardous machinery. So he recognized the symptoms, but then he didn't go on to actually deal with her testimony, which was quite extensive at both hearings, about how she would fall asleep, and that, in fact, on her job as a customer service representative, her first job, she fell asleep talking to a customer on the phone. And then on her second job, when she went back to try to do the same kind of work, she was in a training and she was falling asleep in the training, so much so that the trainer asked her to come and sit up in front of the room, but she still couldn't concentrate, was dozing, and had to quit that job. According to Social Security Ruling 96-8P, the ALJ must, in the narrative of his decision, or her decision in this case, explain whether or not symptom-related limitations are consistent with the record. And the ALJ does not do that in this case concerning Ms. Cooley's problem falling asleep. This court addressed a similar issue in the Allensworth case and held that that was a critical factor that the ALJ had to consider because it's outcome determinative. If Ms. Cooley could not ensure that she'd stay awake on a regular basis on a job, she could not sustain that work. The vocational expert at the 2012 hearing testified to that, that an employee who is dozing off from time to time at work will not be able to sustain competitive employment. What's the time frame in all of her questions? Is there a time when she had to, by a certain time, had to show this disability? Yes. That's September 30th of 2012 is when the date last insured expired. And her testimony at the 2012 hearing came only shortly after that date last insured. So I think it showed what her condition was. And when she returned to work, or tried to return to work, that was in 2010 when she was falling asleep during the training. So that was prior to the expiration of the insured status. And when she worked as a customer service representative prior to that and was falling asleep or fell asleep talking to a customer on the phone, that was also prior to the date last insured. In addition, she saw a consultative examiner in 2011, Dr. Middleton, and told Dr. Middleton about her extreme daytime somnolence. So there is a significant amount of evidence from prior to the date last insured that the ALJ should have considered. Did she have a sleep study at some point? She was using a CPAP machine, so I would think that at some point. Yes. The only sleep study I saw was done in 2005. And in that sleep study, it recognized that she had the obstructive sleep apnea. But the conclusion was that, hopefully, that if she could get five hours of sleep continuously at night using the CPAP, that that would resolve her daytime somnolence. But the evidence shows that it didn't. Even though she was getting five hours of sleep a night, it did not resolve her daytime somnolence. Is her current situation irrelevant? Her current situation is, yeah, it would be irrelevant. Well, if the matter was remanded, the ALJ would consider whether she's doing any better or whether she's in the same situation now, whether her condition improved at some point. Or whether she now has a disability that's more discernible, I guess. Well, because her insured status expired, that wouldn't matter. She would have to establish disability before 2012 to be eligible for any benefits. So she's not eligible for supplemental security income? No. Okay. No. In addition, the ALJ symptom evaluation was improper. As too often happens in these cases, the ALJ relied on the claimant's daily activities, finding that they undermined her allegations of incapacitating symptoms. But even the ALJ recognized that the household chores that she performed were done with frequent breaks, frequent rest periods, that she could only drive for short periods of time. He noted that she sometimes took care of her grandchildren, but he or she, excuse me, the ALJ's woman, she did not note that the claimant testified that that only consisted of watching television with her grandchildren, playing with them a little bit until she, the claimant, got tired. So these are exactly the kind of daily activities that this Court has held over and over again, really don't undermine a claimant's claim of disabling symptoms. I read the ALJ's decision as not reasoning that way, but saying that I'm focusing more on what Ms. Cooley is telling me about how disabling her symptoms are, and these activities are not consistent with her description. I viewed it more as a credibility finding rather than a disability finding. Is that impermissible or not? Yes, that's still, well, it's permissible if it's true, if it's connected to the evidence, but the ALJ doesn't explain what about Ms. Cooley's activities, which were very limited, were inconsistent with the limitations that she gave to the administrative law judge, that she had to nap sometimes during the day, that she was limited in sitting to, I think it was 20 to 30 minutes, and standing for 15 to 20 minutes. There was nothing about her daily activities that suggests that she was actually engaging in activities that exceeded the limits that she told to the administrative law judge. Would it be accurate to say, Mr. Schultz, that nobody really knows what's wrong with Ms. Cooley? Well, she has obstructive sleep apnea. Nobody questioned that. Dr. Numagata did give an explanation that there's a spectrum of diseases, fibromyalgia and chronic fatigue syndrome, both being on that spectrum, that doctors recognize to exist, and it kind of depends on which symptom is more prevalent, is what determines the diagnosis, but that she clearly had one of those impairments. I'm going to save the rest of your time for the medal. Thank you. All right. Mr. Adili for the administration. Good morning, Your Honors. May it please the Court, Counsel, Javed Adili on behalf of the Acting Commissioner. This case is, I think, turns primarily on whether the Court is satisfied that the ALJ sufficiently articulated her view of the evidence to apprise it of her reasoning to permit the Court to conduct meaningful review. And as reflected in our brief, our position is that the answer is yes, that the Court can tell what the ALJ thought about Ms. Cooley's allegations of sleep apnea and the limitations that resulted from it, her allegations that she needed the ability to shift positions between sitting and standing, and generally her allegations that she was disabled. The Court can look at what the ALJ said and review the record and tell that the ALJ was actually pretty diligent in sort of the evaluation of this case. This is a situation where the Appeals Council received the original decision from the ALJ and remanded without court intervention. It got to the Appeals Council. The Appeals Council sent it back because it wanted a more fulsome examination of the fibromyalgia and of the conclusory opinions by Dr. Pethkar that Ms. Cooley was disabled due to multiple impairments. And the ALJ provided that but also, in abundance of caution, went and got a medical expert to testify. The record had proceeded because the case had gone to the Appeals Council. Some time had passed. And it was clear that the ALJ was really concerned that there appeared to be evidence about a constellation of fatigue-related impairments, that she wasn't quite sure what the record supported in terms of limitations with regard to those impairments, and, in fact, even wasn't quite sure what impairments were supported in terms of diagnoses. And engages in a discussion with Dr. Nimagata, the medical expert who testified in 2014, about that, a 25-page discussion beginning on page 62 of the record and ending on page, I believe, 87, where she asks, what does the evidence support in terms of the existence of fatigue-related impairments, the existence of fatigue-related limitations? And then at the end of that discussion asks Dr. Nimagata to provide an RFC, and he does, and then she relies on it. She actually exceeds it slightly by honoring the, in part, the driving limitation that Dr. Pethkar opined in March of 2011, in his opinion. But when you look, for example, at the sleep apnea, the ALJ acknowledged it as a severe impairment, acknowledged the allegations of daytime somnolence, acknowledged that she was using a CPAP machine, and then cited what Dr. Nimagata pointed out, which is the fact that when you looked at the evidence, what you had was evidence replete, the record was replete with allegations of daytime somnolence, but there were very few clinical findings that were consistent with that. Dr. Nimagata testified that Dr. Pethkar's treatment notes were very unhelpful because they didn't document observations that went to fatigue. And Dr. Middleton, who was the consultative examiner, who examined Ms. Cooley on March 25, 2011, went the other way, made the only observation in the record that Dr. Nimagata pointed out, which was that she didn't appear to be easily fatigued. During the examination, she didn't. During the examination, and it's a one-time examination. Yeah, and they're doing a lot of different things, keep her moving and doing all that sort of thing. That's the only thing that would be able to, she'd almost need an observer to kind of follow her around. I don't know how else other than her testimony that she, the problem. Well, the response to that is twofold, Your Honor. One is that Dr. Pethkar certainly, she saw Dr. Pethkar many times in the record, and Dr. Pethkar could have made notes documenting the fatigue, instead just documented her complaints of fatigue. But the other problem, and this is a problem in fatigue cases, is that opposing counsel's sort of brief is shot through with this notion that the ALJ in these cases has to conclusively disprove her allegations of fatigue in order to not credit them. And that's simply not the way the program is set forth. The burden of evidence always exists with the claimant up to step four of the disability adjudication process. And then ultimately, what is the ALJ to do in a situation like this where there are six opinions, one of them by a non-doctor, which is reasonably discounted by the ALJ because it's so inconsistent with the opinions by the doctors, including the functional opinion given by Dr. Pethkar. Dr. Pethkar, who noted that Ms. Cooley's allegations of fatigue found sleep apnea to be a severe impairment, gave a functional opinion in March of 2011, and the only additional limitations that he included in that functional opinion for fatigue were no use of heavy machinery and no driving. And the ALJ addressed both of those limitations, didn't include the limitation to no use of heavy machinery, but did include a limitation to driving only 30 minutes because that was consistent with her testimony at the hearing. The court can take note that none of the jobs that the vocational expert identified require the use of heavy machinery if it's concerned that the lack of inclusion of that additional limitation might be a problem. But the key consideration is that when Dr. Pethkar gave a set of functional limitations, those functional limitations were actually consistent with the ability to work, even if his opinion was taken as a whole. Counsel, what additional evidence would you have wanted to see in a fatigue case like Ms. Cooley's besides her own subjective description of her daytime simulants? I hesitate to sort of put my view of the evidence forward, Your Honor, but it's clear that Dr. Numagata didn't think that Dr. Pethkar's treatment notes included the kinds of clinical observations of fatigue that would have bolstered the view that she was as limited as she alleged. When looking at the evidence, there's much evidence that she says that she's limited, but there's not evidence that her doctors observe her to be so. And that's something that Dr. Numagata pointed out, and the ALJ relied upon that doctor's view of the evidence, that it wasn't well-documented. I'm just kind of following up on Judge Mannion's question. Short of following her around, I guess one could perform further sleep studies to see if the CPAP machine or whatever assistance someone with sleep apnea gets actually gives them uninterrupted sleep. And the ALJ didn't cite everything in the record about this, but, for example, in 2009 she went to Dr. Chowdhury, it's a pain specialist, and he noted her to be doing well on the CPAP in 2009, that she was sleeping okay. That's not cited by the ALJ, I want to make that clear. But I want to address really quickly the fact that Dr. Pethkar also did have a note in one of his treatment notes that said OSA cannot work. An important thing about that note is that it comes in January 2014, which is one and a half years after the date she stopped being insured for benefits. But the ALJ took account of the conclusory opinions that Dr. Pethkar gave and said, these aren't giving me functional restrictions that I can work with, that I can figure out whether they should be included in the RFC. And also one of the conclusory opinions was dated the same day as Dr. Pethkar's March 29, 2011 functional opinion. So to the degree that he thought her to be, quote-unquote, disabled, it should be clear to the court that that set of functional restrictions that he pointed out was what he meant by disabled, that he thought she was that limited. And as reflected in our brief, that's consistent with a finding that she was not disabled under the program. With respect to, I want to address sort of briefly the sort of general subjective symptom argument. Opposing counsel briefs sort of asked the court to read into the new SSR, 163P, and a really old one, 96A, a duty of near-perfect articulation in terms of addressing individually the statements that a claimant makes. The court has taken a very sort of reasonable view of articulation and said, you know, look, we're going to read these things commonsensically. The inferences that sort of follow naturally from what the ALJ did say, the implicature of the decision is part of the decision. And if we can tell what the ALJ thought, that's what we're going to decide. That's how we're going to read the case. If we can tell what the ALJ thought, if we know enough to assess the ALJ's reasoning, we'll judge it on that basis.  163P does not, first of all, does not apply to this case as reflected in our brief, but does not require that kind of exhaustive articulation and does not provide the court any reason to depart from that commonsense jurisprudence. For the reasons reflected in our brief, we ask that the court affirm the Commissioner's decision. Thank you, Mr. Dilley. Mr. Schultz, rebuttal. Well, back in November of 2008, this is page 439 of the record, Dr. Pethkar noted, quote, sleep apnea on disability due to date time somnolence. So it's not just that after her date last insured, he indicated that she was disabled because of the sleep apnea. Back in 2008, he provided that statement. And plaintiff just asked the court to read the quoted sections that we put in our brief from the rulings, 96AP, even if 16-3P doesn't apply, if this court were to find that, because it does require that the ALJ provide an assessment of alleged limitations. And in this case, the ALJ does not actually talk about the fact that Ms. Cooley fell asleep on her job, that he found it was an unsuccessful work attempt when she tried to work, and whether or not she would fall asleep if she was to be given any other job. And that really is a critical factor in this case. On that basis, the plaintiff requests that this court remand and reverse the ALJ's decision. Thank you. Thank you, counsel. The case will be taken under advisement.